UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| Phyllis Spell, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Inventure Foods, Inc.,<br><br>Defendant | 3:21-cv-01426<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Inventure Foods, Inc. ("defendant") manufactures, labels, markets, and sells Crunchy Fries Snacks (Baked) – Cheddar Cheese Flavored under the TGIFriday's brand ("Product").



2.    Dictionaries define "fries" as long thin pieces of fried potato.

3.    The production of fries begins by cutting peeled or unpeeled potatoes into even strips,

which are wiped off or soaked in cold water to remove the surface starch, and thoroughly dried.

4. Then the strips are deep fried through being submerged in vegetable oil.

5. An increasingly popular lower-fat method for producing a French fry-like product is to coat sliced potatoes in oil and spices/flavoring before baking them.[1]

6. The temperature will be lower compared to deep frying, which reduces acrylamide formation.

7. Additionally, these baked fries have lower fat content because they are not cooked in vegetable oil.

8. Despite the pictures of what appear to be sliced potatoes on the front label and the name, Crunchy Fries Snacks (Baked) – Cheddar Cheese Flavored, the Product is almost entirely made from corn instead of potatoes, as shown by the ingredient list.

INGREDIENTS: WHOLE GRAIN CORNMEAL, ENRICHED CORNMEAL [CORN, FERROUS SULFATE, NIACIN, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID], SOYBEAN OIL AND/OR SUNFLOWER OIL, POTATO FLAKES, WHEY POWDER, DRIED CHEDDAR CHEESE [CHEDDAR CHEESE (CULTURED MILK, SALT, ENZYMES), WHEY, BUTTERMILK, SALT, DISODIUM PHOSPHATE, ANNATTO EXTRACT], TAPIOCA MALTODEXTRIN, SEA SALT, NATURAL FLAVORS, YEAST EXTRACT, ONION POWDER, EXTRACTIVES OF PAPRIKA, LACTIC ACID, CITRIC ACID, EXTRACTIVES OF TURMERIC, CALCIUM CARBONATE.

**INGREDIENTS:** WHOLE GRAIN CORN MEAL, ENRICHED CORNMEAL [CORN, FERROUS SULFATE, NIACIN, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID], SOYBEAN OIL AND/OR SUNFLOWER OIL, POTATO FLAKES, WHEY POWDER, DRIED CHEDDAR CHEESE [CHEDDAR CHEESE (CULTURED MILK, SALT, ENZYMES), WHEY, BUTTERMILK, SALT, DISODIUM PHOSPHATE, ANNATTO EXTRACT], TAPIOCA MALTODEXTRIN, SEA SALT, NATURAL FLAVORS, YEAST EXTRACT, ONION POWDER, EXTRACTIVES OF PAPRIKA, LACTIC CID, CITRIC ACID,

---

[1] https://www.acouplecooks.com/baked-french-fries/

EXTRACTIVES OF TURMERIC, CALCIUM CARBONATE.

9. The first two ingredients are whole grain corn meal and enriched cornmeal.

10. The third ingredient is the vegetable oil used to make the Product.

11. Finally, the fourth ingredient in the "fries" is "Potato Flakes."

12. Potato flakes are not sliced potatoes, but "flat chunks of dehydrated mashed potato."

13. Consumers value products made from potatoes for their nutritive properties.

14. Federal and identical state regulations prohibit false and deceptive practices with respect to labeling food. *See* Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(a)(1) (a food is misbranded if "its labeling is false or misleading in any particular."); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal [food labeling] regulation automatically adopted…takes effect in this State on the date it becomes effective as a Federal regulation.").

15. The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

16. The Product's name of Crunchy Fries Snacks is false, deceptive, and misleading because it is not a common or usual name for a product made mostly from cornmeal. 21 C.F.R. § 102.5.

17. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other

comparable products or alternatives.

18. By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product that contained mainly potatoes instead of corn.

19. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

20. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

21. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

22. The Product is sold for a price premium compared to other similar products, no less than approximately $2.89 for 2.5 oz (70.9g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

23. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

24. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

25. Defendant is a subsidiary of Utz, one of the largest potato snacks companies in the United States, which sells its products nationwide.

26. Plaintiff Phyllis Spell is a citizen of Illinois.

27. Defendant Inventure Foods, Inc., is a Delaware corporation with a principal place of business in Hanover, York County, Pennsylvania.

28. Plaintiff and defendant are citizens of different states.

29. Defendant transacts business within this District through the sale of the Product directly to retailers, to distributors who sell to retailers, and directly to consumers from the internet.

30. Venue is in this District because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

31. Venue is in the Benton Division in this District because a substantial part of the events or omissions giving rise to the claim occurred in Williamson County, i.e., Plaintiff's consumption of the Product and her awareness of the issues described here.

Parties

32. Plaintiff Phyllis Spell is a citizen of Marion, Williamson County, Illinois.

33. Defendant Inventure Foods, Inc., is a Delaware corporation with a principal place of business in Hanover, Pennsylvania, York County.

34. Defendant licenses the TGIFriday's name for snack products.

35. TGIFriday's is a national restaurant chain that is a leader and innovator in dining experiences, recognized by industry observers and consumers as responsible for popularizing "bar food," such as fried potatoes covered in cheese, or "cheese fries."

36. Plaintiff bought the Product at or exceeding the above-referenced price, on one or more occasions at one or more locations, including in 2020 and 2021, from stores including Casey's, in Illinois and/or Missouri.

37. Plaintiff relied on the front label statement that the Product was a "Crunchy Fries Snack[s]," and understood "fries" similar to the way this term is defined in dictionaries, and expected a food made chiefly from potatoes instead of corn.

38. Plaintiff has had baked fries which involve placing strips of potato in an oven,

covered in oil with seasonings and flavorings.

39. Plaintiff did not expect a product made mainly from corn with some potato flakes.

40. The Product is sold to consumers from retail and online stores of third-parties, and online.

41. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, from stores including Casey's, between 2020 and 2021, among other times.

42. Plaintiff bought the Product because she expected it contained mainly potatoes instead of corn because that is what the representations said and implied.

43. Plaintiff relied on the words and images on the Product, identified here.

44. Plaintiff bought the Product at or exceeding the above-referenced price.

45. Plaintiff would not have purchased the Product if she knew the representations were false and misleading or would have paid less for them.

46. Plaintiff chose between Defendant's Product and similar products represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

47. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

48. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with their composition.

49. Plaintiff is unable to rely on the labeling of not only this Product, but other items purporting to contain potatoes, because she is unsure of whether their representations are truthful.

50. Plaintiff wants to purchase foods which contain potatoes because she likes them for

their distinctive taste and nutritive properties.

## Class Allegations

51. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Rhode Island, Michigan, Virginia, North Carolina, Kansas, Wyoming, and Delaware, who purchased the Product during the statutes of limitations for each cause of action alleged

52. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

53. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

54. Plaintiff is an adequate representative because her interests do not conflict with other members.

55. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

56. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

57. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

58. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

59. Plaintiff incorporates by reference all preceding paragraphs.

60. Plaintiff and class members desired to purchase a product that contained mainly potatoes instead of corn.

61. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

62. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

63. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

64. Plaintiff relied on the representations that the Product contained mainly potatoes instead of corn

65. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

66. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

67. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

68. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

69. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

70. The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained mainly potatoes instead of corn.

71. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

72. This duty is based on Defendant's outsized role in the market for this type of Product, sold under the iconic TGIFriday's brand, associated across America and the world with bar food staples such as cheddar fries.

73. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

74. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

75. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised.

76. Plaintiff and class members would not have purchased the Product or paid as much

9

if the true facts had been known, suffering damages.

### Negligent Misrepresentation

77. Defendant had a duty to truthfully represent the Product, which it breached.

78. This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, as the custodian of the iconic TGIFriday's brand, associated across America and the world with bar food staples such as cheddar fries.

79. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, the preeminent place for bar food.

80. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

81. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

82. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained mainly potatoes instead of corn.

83. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations.

84. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

85. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 15, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com